Jean-Paul Ciardullo, CA Bar No. 284170
jciardullo@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: 213-972-4500
Facsimile: 213-486-0065

*Attorneys for Defendants*
*Koninklijke Philips N.V. and*
*Philips North America LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITBIT, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>KONINKLIJKE PHILIPS N.V. and<br>PHILIPS NORTH AMERICA LLC,<br><br>*Defendants*. | Case No. 4:20-cv-02371-PJH<br><br>**DEFENDANTS' REPLY<br>IN SUPPORT OF THEIR<br>MOTION TO DISMISS AND TRANSFER**<br><br>Date:      September 9, 2020<br>Time:      9:00AM<br>Location: Courtroom 3 – 3rd Floor<br>               1301 Clay Street, Oakland<br><br><u>Honorable Phyllis J. Hamilton</u> |

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  DISMISSAL FOR LACK OF PERSONAL JURISDICTION IS PROPER ................... 2

  A. The Domestic Industry Stance In The ITC Regarding The Lifeline Products Does Not Give Rise To Specific Personal Jurisdiction Over Royal Philips ............... 2

  B. No Jurisdictional Discovery Is Warranted ........................................................... 3

  C. Fitbit Has Failed To Show Why This Court Should Deviate From The Well-Reasoned Ruling Of Judge Seeborg Negating Rule 4(k)(2) ................................ 3

    1. "State's Courts Of General Jurisdiction" Simply Means That The Relevant State's Long Arm Statute Is Satisfied ................................. 3

    2. The *Merial* Dicta Does Not Apply ......................................................... 5

    3. Rule 4(k)(2)(B) Is Not Satisfied ............................................................. 8

  D. Fitbit's Request To Split Its Causes Of Action Should Be Denied ..................... 9

III. SECTION 1404(a) TRANSFER IS APPPROPRIATE IN THE ALTERNATIVE ........ 9

  A. Judge Seeborg's Findings On Transfer Merit Deference ..................................... 9

  B. Fitbit's Cited Ties To California Are Of Minimal Significance ....................... 10

  C. The Convenience Factors Point To Massachusetts, Which Also Has A Greater Interest In This Controversy ................................................................ 10

  D. The Interests Of Justice Are Particularly Important Here ................................. 10

IV.  DEFENDANTS' MOTION ON MARKING HAS NARROWED THE ISSUES ........ 11

V.   FITBIT'S PLEADING OF PRE-SUIT KNOWLEGDE IS IMPLAUSIBLE, AND COMPELS DISMISSAL ............................................................................................... 12

  A. Fitbit's Attorney Argument And Cited Cases Do Not Address The Facial Implausibility That Defendants Specifically Knew Of These Patents .............. 12

  B. Precedent Supports Dismissing The Willfulness Allegations In Their Entirety ............... 14

  C. Fitbit's Indirect Infringement Claims Should Be Dismissed As To All Conduct Leading Up To And Including Defendants' Receipt Of The Complaint ........... 15

VI.  CONCLUSION .............................................................................................................. 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adidas Am., Inc. v. Skechers USA, Inc.*,
  No. 3:16-cv-1400-SI, 2017 U.S. Dist. LEXIS 89752 (D. Or. June 12, 2017) ................................... 15

*Alpha Tech. U.S.A. Corp. v. N. Dairy Equip., Ltd.*,
  No. 6:17-cv-1000-Orl-31DCI, 2018 U.S. Dist. LEXIS 9328 (M.D. Fla. Jan. 22, 2018) ..................... 8

*Apple Inc. v. Samsung Elecs. Co.*,
  258 F. Supp. 3d 1013 (N.D. Cal. 2017) ............................................................................................. 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................................... 13

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*,
  No. 19-CV-12533-WGY, 2020 U.S. Dist. LEXIS 76156 (D. Mass. Apr. 30, 2020) ....................... 13

*Cap Co., Ltd. v. McAfee, Inc.*,
  No. 14-cv-05068-JD, 2015 U.S. Dist. LEXIS 83522 (N.D. Cal. June 26, 2015) .............................. 15

*In re Certain Devices for Improving Uniformity Used in a Backlight Module*,
  2012 ITC LEXIS 2324 (Int'l Trade Comm'n Oct. 22, 2012) .............................................................. 2

*In re Certain Liquid Crystal Display Devices & Prods. Containing the Same*,
  2008 ITC LEXIS 1835 (Int'l Trade Comm'n Sept. 23, 2008) ............................................................. 2

*Dentsply Sirona, Inc. v. Edge Endo, LLC*,
  No. 17-1041 WJ/SCY, 2019 U.S. Dist. LEXIS 59715 (D.N.M. Apr. 8, 2019) ................................ 14

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ........................................................................................................................... 12

*Falcon Enters. v. Centurion Ltd.*,
  No. C07-0065RSL, 2007 U.S. Dist. LEXIS 80031 (W.D. Wash. Oct. 18, 2007) ........................... 8, 9

*Finjan, Inc. v. Cisco Sys. Inc.*,
  2017 U.S. Dist. LEXIS 87657 (N.D. Cal. June 7, 2017) ................................................................... 14

*Finjan, Inc. v. Juniper Networks, Inc.*,
  2018 U.S. Dist. LEXIS 25323 (N.D. Cal. Feb. 14, 2018) .................................................................. 14

*Frac Shack Inc. v. Afd Petroleum Tex.*,
  No. 7:19-cv-00026-DC, 2019 U.S. Dist. LEXIS 141118 (W.D. Tex. June 13, 2019) ..................... 14

*Getz v. Boeing Co.*,
  654 F.3d 852 (9th Cir. 2011) ............................................................................................................... 3

*God, Family & Country LLC v. Marcrest Mfg.*,
   No. 08-3140, 2009 U.S. Dist. LEXIS 14513 (C.D. Ill. Feb. 24, 2009) ...........................................7, 8

*Goes Int'l AB v. Wuzla*,
   No. CV 13-7102 PA (Ex), 2014 U.S. Dist. LEXIS 193278 (C.D. Cal. Apr. 7, 2014) ......................6, 7

*Groove Dig., Inc. v. Jam City, Inc.*,
   Civil Action No. 1:18-cv-01331-RGA, 2019 U.S. Dist. LEXIS 13563 (D. Del. Jan.
   29, 2019) ................................................................................................................................13

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016)..................................................................................................14, 15

*InVue Sec. Prods. v. Mobile Tech, Inc.*,
   No. 3:19-cv-407-SI, 2019 U.S. Dist. LEXIS 180669 (D. Or. Oct. 18, 2019)......................................13

*Kannar v. Alticor, Inc.*,
   No. C-08-5505 MMC, 2009 U.S. Dist. LEXIS 35091 (N.D. Cal. Apr. 9, 2009) ................................10

*Koninklijke Philips N.V. et al. v. Schreder Lighting LLC*
   et al, 14-cv-12282-IT (D. Mass.) .....................................................................................................6

*Krausz Indus. v. Smith-Blair, Inc.*,
   188 F. Supp. 3d 545 (E.D.N.C. 2016). (Opp..) ...............................................................................8

*Miller Indus. Towing Equip. v. NRC Indus.*,
   No. 1:19-CV-00095 REEVES/LEE, 2020 U.S. Dist. LEXIS 67365, at *14-15 (E.D.
   Tenn. Apr. 16, 2020)..........................................................................................................6

*Omni Capital Int'l v. Rudolf Wolff & Co.*,
   484 U.S. 97 (1987)..................................................................................................................4, 5

*Orbital Austl. PTY Ltd. v. Daimler AG*,
   No. 3:14CV808, 2015 U.S. Dist. LEXIS 86631 (E.D. Va. July 1, 2015)...........................................7

*Radware, Ltd. v. F5 Networks, Inc.*,
   No. 5:13-cv-02024-RMW, 2016 U.S. Dist. LEXIS 112504 (N.D. Cal. Aug. 22, 2016)....................15

*In re Seagate Tech., LLC*,
   497 F.3d 1360 (Fed. Cir. 2007)...............................................................................................15

*Simo Holdings, Inc. v. H.K. uCloudlink Network Tech. Ltd.*,
   396 F. Supp. 3d 323 (S.D.N.Y. 2019)....................................................................................14

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
   330 F. Supp. 3d 574 (D. Mass. 2018) ...................................................................................14

*T.M. Hylwa, M.D., Inc. v. Palka*,
   823 F.2d 310 (9th Cir. 1987) .................................................................................................3

*Teras Cargo Transp. Am., LLC v. Cal Dive Int'l Austl. PTY Ltd.*,
  No. 15-cv-03566-JSC, 2015 U.S. Dist. LEXIS 141362 (N.D. Cal. Oct. 16, 2015)..............6

*Touchcom, Inc. v. Bereskin & Parr*,
  574 F.3d 1403 (Fed. Cir. 2009)..............8

*Valinge Innovation AB v. Halstead New Eng. Corp.*,
  Civil Action No. 16-1082-LPS-CJB, 2018 U.S. Dist. LEXIS 88696 (D. Del. May 29, 2018) ..............15

*Venmill Indus., Inc. v. ELM, Inc.*,
  100 F. Supp. 3d 59 (D. Mass. 2015) ..............5

*Windy City Innovations, LLC v. Microsoft Corp.*,
  193 F. Supp. 3d 1109 (N.D. Cal. 2016) ..............14

**Statutes**

7 U.S.C. § 25(c) ..............5

28 U.S.C. § 1333(1) ..............6

28 U.S.C. § 1404(a) ..............1, 9, 10

28 U.S.C. § 1631 ..............9

35 U.S.C. § 284 ..............12

35 U.S.C. § 287 ..............11

**Other Authorities**

Fed. R. Civ. P. 4(k)(2) .............. *passim*

## I. INTRODUCTION

Defendants Koninklijke Philips N.V. ("Royal Philips") and Philips North America LLC ("PNA") hereby respectfully reply to Fitbit, Inc.'s ("Fitbit") Opposition (Dkt. 21) to Defendants' Motion to Dismiss and Transfer (Dkt. 20, "Motion").  With respect to lack of personal jurisdiction over Royal Philips, Fitbit points to the fact that Defendants established in the ITC Action that there is a domestic industry for the accused Lifeline products.  However, this does not equate to Royal Philips itself having minimum contacts in the US.  The domestic industry claimed in the ITC Action is not operated by Royal Philips, and the ITC does not require that a parent company / patent owner itself operate a domestic industry in order to bring a complaint.  Fitbit falls back on Rule 4(k)(2), but provides no meaningful rationale for why this Court should reach any different conclusion on that issue than Judge Seeborg did, saying only that he "erred."  (Opp., p. 10.)  That Rule 4(k)(2) can be negated by establishing jurisdiction in federal (not just state) court is both apparent from the Advisory Committee Notes, and has been adopted by the overwhelming majority of courts given that any other interpretation would lead to nonsensical results.  Fitbit's talismanic reliance on dicta and arbitrarily invented bright-line rules fails to speak to reality, or to address the very reason why Rule 4(k)(2) exists in the first place, which is simply as a backstop to ensure a foreign defendant can be sued *somewhere*, such that Rule 4(k)(2) is fully negated where – as here – the defendant identifies where it can be properly sued.

With respect to Royal Philips's motion in the alternative to transfer under 28 U.S.C. § 1404(a) (joined by PNA), Fitbit has no meaningful rebuttal to Defendants' cited legal authority or facts, and sweeps under the rug the objective facts showing that Fitbit filed this case in California for improper tactical reasons and forum shopping.  Indeed, Fitbit now admits for the first time that it does not commercialize any products under the patents, making any purported preference for California all the more attenuated.

If this case were not dismissed and transferred, then further in view of Fitbit's new admission that it does not sell any products under the patents, not only should the Court grant Defendants' motion to preclude pre-suit damages (at least as to the '377 Patent, for which Fitbit now expressly disclaims pre-suit damages), but the Court should also dismiss Fitbit's claims for lost profits damages and injunctive relief as implausible, since the Complaint provides no factual basis to show why either is justified.

Finally, Fitbit has failed to show that its allegation of Defendants' pre-suit knowledge of the patents is plausible, so its claims for willfulness and pre-suit indirect infringement should be dismissed.

## II. DISMISSAL FOR LACK OF PERSONAL JURISDICTION IS PROPER

### A. The Domestic Industry Stance In The ITC Regarding The Lifeline Products Does Not Give Rise To Specific Personal Jurisdiction Over Royal Philips

Fitbit argues that Royal Philips admitted in its complaint in the ITC Action to having a domestic industry for the accused Lifeline products[1] in the United States, and that this purported admission contradicts the Meerburg Declaration and gives rise to specific personal jurisdiction over Royal Philips in California. However, had Royal Philips and PNA known at the time they filed their ITC Complaint that it would ever matter, they would have more precisely parsed the ITC Complaint to clarify that the Lifeline business unit is not operated by Royal Philips, which is merely a foreign parent company / licensor.[2] The Meerburg Declaration is accurate: Royal Philips does not have any relevant presence or operations in the United States.

While the ITC requires complainants to demonstrate that a domestic industry exists for the patented technology, there is no legal requirement that the patent owner itself (in this case Royal Philips) owns and operates that domestic industry. *In re Certain Devices for Improving Uniformity Used in a Backlight Module*, 2012 ITC LEXIS 2324, *88 (Int'l Trade Comm'n Oct. 22, 2012) ("The Commission has long held that the domestic industry inquiry under Section 337 is not limited to the activities of the patent owner, but also involved the activities of any licensees.") (citations omitted); *In re Certain Liquid Crystal Display Devices & Prods. Containing the Same*, 2008 ITC LEXIS 1835, *7-8 (Int'l Trade Comm'n Sept. 23, 2008) (relying on the activities of Samsung's US subsidiaries to establish domestic industry).

Furthermore, Fitbit concedes (by its non-opposition) that there could be no specific personal jurisdiction over Royal Philips with respect to Fitbit's Count 2 for infringement of U.S. Patent No. 8,868,377 ("'377 Patent") asserted against the Snore Band products. Thus, even if Fitbit could have otherwise established specific personal jurisdiction with respect to the Lifeline cause of action (which it cannot), the case would still have to be dismissed against Royal Philips as to the Snore Band claims.

---

[1] Fitbit's Complaint accuses Lifeline products of infringing Patent No. 7,145,462 ("'462 Patent).

[2] Fitbit tries to fault Defendants for using the collective term "Philips" in the ITC Complaint, in part to defray Defendants' criticism of Fitbit's own use of that collective term. (Opp., p. 6, n. 2.) However, whereas drawing a distinction between the two Philips entities clearly mattered a great deal in the present case, at the time that Royal Philips and PNA filed the ITC Complaint in December of 2019, there was no reason to believe that being precise about delineating between them mattered.

**B.     No Jurisdictional Discovery Is Warranted**

Fitbit makes a throw-away request in a footnote (p. 5, n.1) for jurisdictional discovery on the basis that Royal Philips has supplied "contradictory" evidence.  However, as discussed above, there is nothing contradictory about the Meerburg Declaration, which is completely accurate.  Fitbit fails to demonstrate any other basis on which it should be entitled to jurisdictional discovery.  *See Getz v. Boeing Co*., 654 F.3d 852, 860 (9th Cir. 2011) ("Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery.") (citations omitted).

**C.     Fitbit Has Failed To Show Why This Court Should Deviate From The Well-Reasoned Ruling Of Judge Seeborg Negating Rule 4(k)(2)**

Fitbit's Opposition offers no new arguments that were not already considered and rejected by Judge Seeborg in finding that Rule 4(k)(2) is negated by Royal Philips's consent to jurisdiction in the more appropriate forum of Massachusetts.  Instead, Fitbit simply argues that Judge Seeborg "erred."  (Opp., p. 10.)  Judge Seeborg did not err.

**1.     "State's Courts Of General Jurisdiction" Simply Means That The Relevant State's Long Arm Statute Is Satisfied**

Fitbit argues in a vacuum that the "plain meaning" of the phrase "state's courts of general jurisdiction" literally requires a defendant to show that it could be sued in state court – not federal court –in order to negate the operation of Rule 4(k)(2).  This is nonsensical in view of (1) the clear purpose of the Rule as explained in the Advisory Committee Notes, (2) the bizarre and arbitrary outcomes of Fitbit's interpretation, and (3) the fact that the overwhelming majority of courts have already rejected Fitbit's interpretation.  In actuality, all that "state's courts of general jurisdiction" in Rule 4(k)(2) refers to is that personal jurisdiction must comport with the due process requirements of the long arm statute of the state in which the court in question sits, regardless of whether that court is a state court or a federal court.  Absent an express federal statute on point, federal courts have no independent basis to exercise personal jurisdiction, but rather derive that authority from the long arm statutes of the states in which they sit, such that if the due process concerns of those state long arm statutes are satisfied, the federal courts (in this case, the District of Massachusetts) may act.  *T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310, 312 (9th Cir. 1987).

The Advisory Committee Notes to the 1993 Amendments explain that the addition of Rule 4(k)(2) was in major part a response to the Supreme Court's ruling in *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 111 (1987), which concluded that a legislative solution was needed to address jurisdiction in federal question cases where foreign defendants were not subject to any state's long arm statute (emphasis added):

> A narrowly tailored service of process provision, authorizing service on an alien in a federal-question case when the alien is not amenable to service **under the applicable state long-arm statute**, might well serve the ends of the CEA and other federal statutes. It is not for the federal courts, however, to create such a rule as a matter of common law. That responsibility, in our view, better rests with those who propose the Federal Rules of Civil Procedure and with Congress.

As the high court itself recognized in *Omni*, the federal courts derive their authority from the long arm statutes of the states in which they sit, and so were limited by them without some new express enabling rule of procedure. *Id*. at 105. The Supreme Court did not speak in terms of whether actions could be brought in "state court" or "federal court" because that was not the issue: the question was simply one of satisfying the state long arm statutes, which are what the federal courts themselves apply. This was precisely the basis for the addition of Rule 4(k)(2), as was explained in the 1993 Advisory Committee Notes (emphasis added):

> This paragraph corrects a gap in the enforcement of federal law. Under the former rule, a problem was presented when the defendant was a non-resident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under **state long-arm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction**. In such cases, the defendant was shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts, which was incorporated into the federal practice by the former rule. In this respect, the revision responds to the suggestion of the Supreme Court made in *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd*., 484 U.S. 97, 111 (1987).

Thus, the meaning of the phrase "state's courts of general jurisdiction" in Rule 4(k)(2) is simply to ask whether state long arm statutes are satisfied, regardless of whether those long arm statutes would be applied in state or federal court. If a federal court could properly exercise personal jurisdiction pursuant to the long arm statute of the state in which it sits – just as the District of Massachusetts can properly exercise personal jurisdiction over Royal Philips pursuant the Commonwealth's long arm statute based upon Royal Philips's consent to suit there (*see* Motion, p. 11, n.4) – then the requirement of Rule 4(k)(2)(A) is negated.

Fitbit does nothing to counter Royal Philips's argument in the Motion that limiting Rule 4(k)(2) to

state courts to the exclusion of federal courts would yield nonsensical results, in particular the arbitrary inability to ever negate Rule 4(k)(2) in cases arising under exclusive federal jurisdiction that could not be brought in state court (*e.g.*, patent, admiralty, and copyright).  Judge Seeborg recognized this incongruous result in his ruling, and agreed that it could never have been intended. (Ruling, p. 5.)  Indeed, the Supreme Court's *Omni* case concerned the Commodities Exchange Act, actions for violations of which are under exclusive federal jurisdiction and cannot be brought in state court.  7 U.S.C. § 25(c) ("The United States district courts shall have exclusive jurisdiction of actions brought under this section.")  Thus, under Fitbit's erroneous interpretation, a foreign defendant sued under that CEA (as in *Omni*) could never under any circumstances avoid application of Rule 4(k)(2): they would become arbitrarily "trapped" in whatever forum the plaintiff chose.  Such a result is clearly contrary to what both the Supreme Court and the Rule drafters intended.

Fitbit also too easily brushes aside the weight of authority cited by Royal Philips in which courts routinely negate Rule 4(k)(2) based on a showing only of *specific* personal jurisdiction in another *federal* court. (Motion, p. 9-12.)  These courts all implicitly understood that Rule 4(k)(2) could not be given the arbitrary and erroneous reading that Fitbit advances, and have built up a body of law for the correct reading of Rule 4(k)(2), most recently buttressed by Judge Seeborg's ruling.  Fitbit fails to address this, and brings to bear only one contrary case, *Venmill Indus., Inc. v. ELM, Inc.*, 100 F. Supp. 3d 59, 69 (D. Mass. 2015), in which, without conducting any meaningful analysis, and without reference to the origin and purpose of Rule 4(k)(2), the court read Rule 4(k)(2) to be limited only to state courts.  However, stacked against the clear weight of authority, and considering its lack of analysis, it is clear that it is the *Venmill* court that erred, not Judge Seeborg and all the other district courts that have widely applied the opposite interpretation.

### 2. The *Merial* Dicta Does Not Apply

In defending the thoroughly discredited and narrow *Merial* dicta, Fitbit not only ignores Judge Seeborg's ruling, but fundamentally fails to articulate any sensible argument for why post-suit consent to personal jurisdiction should not negate Rule 4(k)(2).  Fitbit seems to start from a premise that it has a right to maintain a lawsuit against a foreign defendant anywhere it wishes, but it is quite the other way around.  US law and due process principles forbid forcing a foreign entity to defend itself in US courts absent proper grounds.  As shown in the case law history in the Motion, Rule 4(k)(2) was only intended to be a last resort measure where a foreign defendant could not otherwise be subject to jurisdiction under any particular state's

long arm statutes. But here – as Judge Seeborg correctly noted – the concerns that drive Rule 4(k)(2) are mooted by Royal Philips's consent to proceed in Massachusetts.

Fitbit points to a lone footnote in a six year old Royal Philips brief in another 2014 case, *Koninklijke Philips N.V. et al. v. Schreder Lighting LLC* et al, 14-cv-12282-IT (D. Mass.) (Rosenberg Ex. B at 7 n.2) in which Royal Philips in passing cited the *Merial* dicta positively. However, the facts of that case were quite different: unlike here where Royal Philips has consented to Massachusetts, the foreign defendant in the 2014 case had refused to identify any other forum where it could be sued, which is why Royal Philips argued that Rule 4(k)(2) applied. (*Id.*, p. 7.) Thus, Royal Philips need not have referenced the *Merial* dicta at all in the 2014 brief, and the inconsequential passing reference to it was incorrect. What Royal Philips has argued in its present Motion – with the benefit of in-depth analysis and an exhaustive survey of the case law – is correct.[3]

Fitbit also argues that the cases cited by Royal Philips are not applicable, but this is also untrue. In *Miller Indus. Towing Equip. v. NRC Indus.*, No. 1:19-CV-00095 REEVES/LEE, 2020 U.S. Dist. LEXIS 67365, at *14-15 (E.D. Tenn. Apr. 16, 2020), although the defendant's underlying briefing referenced a "single sale" it had made of the accused product in New Jersey (Rosenberg Ex. C, p. 9), the Court itself appeared sufficiently satisfied by the defendant's consent to jurisdiction alone.[4] Likewise, in *Teras Cargo Transp. Am., LLC v. Cal Dive Int'l Austl. PTY Ltd.*, No. 15-cv-03566-JSC, 2015 U.S. Dist. LEXIS 141362 (N.D. Cal. Oct. 16, 2015) (an admiralty case for which there is exclusive federal jurisdiction – *see* 28 U.S.C. § 1333(1)[5]), the defendant had merely conceded "minimum contacts" as an expediency (Rosenberg Dec., Ex. D, p. 4). The Court's ruling was premised on the defendant having conceded to Texas (federal court) – not on any actual facts showing personal jurisdiction. *Id.* at *27-28 ("Cal Dive Australia has conceded that venue is proper in Texas <u>by virtue of its concession</u> that it is subject to personal jurisdiction in that state.") (emphasis added).

With respect to *Goes Int'l AB v. Wuzla*, No. CV 13-7102 PA (Ex), 2014 U.S. Dist. LEXIS 193278

---

[3] To the extent that Fitbit is implying some kind of estoppel from this passing reference to *Merial* in a six year old brief, clearly none applies. The statement was made in a different case, under different facts, was not necessary to the decision, and, most importantly, was legally erroneous.

[4] Notably, even assuming that personal jurisdiction turned on minimum contacts in this and other cited cases, minimum contacts could at most be premised on *specific* personal jurisdiction in *federal* court over exclusively federal claims. No showing of general jurisdiction, or state court jurisdiction, could be made.

[5] Again, by Fitbit's logic, Rule 4(k)(2) could not have been negated here because there was no state court that could have heard an admiralty case, yet the court indeed did negate Rule 4(k)(2).

(C.D. Cal. Apr. 7, 2014), contrary to Fitbit's arguments, the court had indeed indicated that it was inclined to negate Rule 4(k)(2) but for independently having decided to transfer venue. *Id*. at *5-6 ("it is highly doubtful that Goes could establish that this Court possesses personal jurisdiction over Wuzla"). Fitbit also argues that the court's comments were driven by a finding a general personal jurisdiction in New York State, but this is inaccurate. Although Fitbit points to language in the defendant's briefing inarticulately mentioning "continuous systemic contacts" in New York, those contacts only amounted to having an outside counsel in New York (Wuzla was a Chinese company with no other New York contacts). (Rosenberg Ex. E, p. 7, 20-21.) In fact, the court itself never deemed Wuzla to be subject to general personal jurisdiction in New York (merely having an attorney there would not give rise to such jurisdiction), and instead deemed it be a matter of personal jurisdiction by virtue of "consent" in the "Eastern District of New York," *i.e.*, *federal* court rather than New York State generally. 2014 U.S. Dist. LEXIS 193278 at *5, *7. *Goes* was a copyright case implicating exclusive federal jurisdiction, so it could not have been brought in or transferred to state court.

With respect to *God, Family & Country LLC v. Marcrest Mfg*., No. 08-3140, 2009 U.S. Dist. LEXIS 14513 (C.D. Ill. Feb. 24, 2009) – which expressly held that consent alone is sufficient to establish jurisdiction in an alternative forum – Fitbit argues in circular fashion that the case is "no longer good law" in view of the *Merial* dicta. (Opp., p. 14.) But that of course is the very question presented by the present Motion. Indeed, Judge Seeborg has just agreed with the premise of *God, Family & Country*.

Fitbit criticizes Royal Philips's reliance on *Orbital Austl. PTY Ltd. v. Daimler AG*, No. 3:14CV808, 2015 U.S. Dist. LEXIS 86631 (E.D. Va. July 1, 2015) given that *Orbital* did not find consent sufficient to negate Rule 4(k)(2). But Royal Philips did not rely on *Orbital* for that proposition (which *Orbital* got wrong by deferring too much to the *Merial* dicta), but rather for the separate proposition that a plaintiff can establish personal jurisdiction under Rule 4(k)(2) in any court in the country at the time of filing of a lawsuit, such that it is meaningless in these cases to ask where personal jurisdiction could have been proper at the commencement of the action: it would have been proper anywhere…at least absent subsequent action by the foreign defendant to negate such jurisdiction. Refusing to acknowledge this obvious logic, Fitbit says "it is not clear why Royal Philips thinks that proposition helps its motion .… by contending that Fitbit could have obtained jurisdiction under Rule 4(k)(2) in the District of Massachusetts, Royal Philips is conceding that Fitbit did obtain jurisdiction under Rule 4(k)(2) in this District." (Opp., p. 15.) Fitbit ignores that under the relevant burdens of proof, a

plaintiff invoking Rule 4(k)(2) always is legally presumed to have established personal jurisdiction in their chosen forum *in the first instance*. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1413-15 (Fed. Cir. 2009). The burden is on the foreign defendant to subsequently negate Rule 4(k)(2) by establishing personal jurisdiction in a different forum. If the foreign defendant does not act, personal jurisdiction remains in the plaintiff's chosen forum. Thus, if Fitbit had brought suit in Massachusetts to begin with under Rule 4(k)(2), personal jurisdiction would have presumptively existed there at the time of filing the action, and Royal Philips would not have sought to negate it. This is why considerations of where personal jurisdiction could have existed at the time of commencement of the lawsuit are meaningless in the context of Rule 4(k)(2).

In its Footnote 5 (p. 15), Fitbit invents out of thin air a rule that post-suit consent to personal jurisdiction is only effective in the court in which the plaintiff initially brings suit. Fitbit cites no authority for this arbitrary proposition, which conveniently excludes the mechanism by which Rule 4(k)(2) could be negated. Federal Circuit Judge Schall argued compellingly in his dissent in the *Merial* case that it made no sense to "engraft" a rule against achieving personal jurisdiction by consent "onto the Rule 4(k)(2) procedure, especially where that procedure is founded upon the principle that personal jurisdiction is a matter that is waivable." *Merial*, 681 F.3d at 1311-12. The Court in *God, Family & Country,* 2009 U.S. Dist. LEXIS 14513, at *6-9, expressly agreed with this sensible logic, as Judge Seeborg now has. Indeed, there is clearly nothing inherently wrong with a defendant achieving jurisdiction in an alternative forum by consenting to be sued there subsequent to the plaintiff's complaint: that is precisely the temporal order of events every time a defendant successfully transfers a case to another jurisdiction where the defendant may not otherwise have had minimum contacts.[6]

### 3. Rule 4(k)(2)(B) Is Not Satisfied

Under Rule 4(k)(2)(B), the district court may not exercise jurisdiction unless it would comport with fair play and substantial justice. Fitbit insists that there is "no dispute" that this criterion is met, and proceeds

---

[6] Fitbit notes Royal Philips's reliance on *Alpha Tech. U.S.A. Corp. v. N. Dairy Equip., Ltd*., No. 6:17-cv-1000-Orl-31DCI, 2018 U.S. Dist. LEXIS 9328, at *11-12 (M.D. Fla. Jan. 22, 2018) and *Krausz Indus. v. Smith-Blair, Inc*., 188 F. Supp. 3d 545, 558 (E.D.N.C. 2016). (Opp., p. 14, n. 4.) Royal Philips also relied on *Falcon Enters. v. Centurion Ltd.*, No. C07-0065RSL, 2007 U.S. Dist. LEXIS 80031, at *8 (W.D. Wash. Oct. 18, 2007) in the 2246 Case. Royal Philips has relied on these cases to disprove Fitbit's erroneous theory that Rule 4(k)(2) can only be negated by establishing jurisdiction in an alternative state court. They also demonstrate that no showing of *general* personal jurisdiction in another state is required, since only *specific* personal jurisdiction could be shown in these cases.

to essentially ignore the compelling arguments that Royal Philips presented in Section III.C.4 and II.A of its Motion, showing how the present case was filed by surprise where and when it was for improper tactical reasons. Indeed, even if the Court did not otherwise agree with Judge Seeborg's ruling and the arguments that Royal Philips presents above, it could still in its broad discretion decline to invoke Rule 4(k)(2) to avoid rewarding gamesmanship, as was indeed concluded in *Falcon Enters. v. Centurion Ltd.*, No. C07-0065RSL, 2007 U.S. Dist. LEXIS 80031, at *8 (W.D. Wash. Oct. 18, 2007). Fitbit's erroneous starting premise is that Rule 4(k)(2) gives it carte blanche to maintain a lawsuit against a foreign defendant wherever it so chooses, yet Fitbit has turned the purpose of Rule 4(k)(2) on its head by deliberately surprising Royal Philips with a tactical filing in California when Royal Philips was (and is) already amendable to suit in Massachusetts.

### D.    Fitbit's Request To Split Its Causes Of Action Should Be Denied

At page 17 of its Opposition, Fitbit makes the curious suggestion that the Court should dismiss Royal Philips outright rather than transfer the claims against Royal Philips to Massachusetts pursuant to 28 U.S.C. § 1631 as Royal Philips has requested (and as Judge Seeborg ordered), thereby leaving PNA as the sole defendant in this action. Fitbit's motivations in making this odd request are transparent. Fitbit knows that if the Royal Philips claims are transferred to Massachusetts, then the claims against PNA almost certainly would be as well because it would be improper to litigate two essentially identical cases simultaneously on opposite coasts. Thus, dismissing Royal Philips outright in the short term would give Fitbit a greater chance of keeping the PNA claims in California for reasons of perceived tactical leverage (though PNA would still argue that it should be transferred under 28 U.S.C. §1404(a)), while also giving Fitbit the flexibility to later sue Royal Philips in Massachusetts, thereby splitting and staggering its causes of action prejudicially to Royal Philips. To be sure, Fitbit hardly suggests that it would grant Royal Philips a covenant not to sue, and if Royal Philips sought to file a declaratory judgment action to remove the cloud of litigation over it, the preexisting case against PNA in California would anchor venue there, end-running around the personal jurisdiction problem. The Court should not set the stage for Fitbit's jurisdictional Catch-22.

## III.    SECTION 1404(a) TRANSFER IS APPPROPRIATE IN THE ALTERNATIVE
### A.    Judge Seeborg's Findings On Transfer Merit Deference

Fitbit argues that Judge Seeborg did not find that Section 1404(a) transfer would have been appropriate alternative relief in the 2246 Case. This Court can of course read Judge Seeborg's ruling for itself and draw

its own conclusions. Critically, Judge Seeborg did not reach his conclusion in a vacuum, but rather had before him a full and detailed set of briefing from the parties on the Section 1404(a) issue (just like the present case), and was well equipped to reach a fully informed decision on the matter. Fitbit also fails to acknowledge that the facts of the present case merit transfer even more than the facts of the 2246 Case did.

### B. Fitbit's Cited Ties To California Are Of Minimal Significance

Fitbit ignores the directly on-point precedent that Defendants cited in *Kannar v. Alticor, Inc.*, No. C-08-5505 MMC, 2009 U.S. Dist. LEXIS 35091, at *13 (N.D. Cal. Apr. 9, 2009) for the proposition that a patent infringement plaintiff's choice of forum is afforded minimal deference when stacked against the primary location of the accused infringing activity. Citing instead a Minnesota case, Fitbit emphasizes that some of the inventors are located in California, and PNA nominally has office locations within the Ninth Circuit. This fails to grapple with the reality that the central locus of the Lifeline business is Massachusetts (where Fitbit, too, has an office). In the case of Snore Band, there is no relevant connection to California. In view of Fitbit's new admissions in its Opposition that it does not even commercialize any products under the asserted patents (Opp., Section IV.C), there is now even less of a basis to tie this case to California.

### C. The Convenience Factors Point To Massachusetts, Which Also Has A Greater Interest In This Controversy

Defendants' Motion sets forth in detail why the convenience factors favor Massachusetts: it is where PNA is headquartered, it is where the Lifeline products were developed, it is where the Lifeline employees and evidence are located, and it is also where Fitbit has another major office. Fitbit faults Defendants for purportedly not identifying any specific witnesses via an affidavit. In fact, Defendants did indeed supply a sworn statement in the form of the Verified ITC Complaint that explains that the Lifeline employees are in Massachusetts. For this same reason, Massachusetts also has a clear interest in the controversy. Furthermore, now that there are already multiple Philips/Fitbit patent litigations pending in Massachusetts concerning biometric monitoring technology, there is an undeniable symmetry to allowing the District of Massachusetts to resolve this controversy as well, rather than unnecessarily maintaining a vestigial case on the opposite coast.

### D. The Interests Of Justice Are Particularly Important Here

The present case is unlike most in that it involves the latest in a long series of lawsuits between the same litigants concerning related technology, wherein those lawsuits are at this point centered around a

particular district court (Massachusetts), the first of the Defendants (Royal Philips) lacks any relevant minimum contacts with the United States but has consented to proceed in that same district, and the second of the Defendants is based out of that same district. It was precisely because Massachusetts was the most appropriate and convenient forum that Fitbit chose to file this latest case by surprise in California. It having already been established that Massachusetts was the clear forum of choice for the parties' patent disputes, it was indeed incumbent on Fitbit to have discusses choice of forum beforehand with Defendants. This is all the more true with respect to Royal Philips, which Fitbit knew from past experience lacked any relevant connections with the United States (apart from having initiated the ITC Action on unrelated patents, which is irrelevant to jurisdiction in the present case). Even there, because there is only one ITC court, choice of forum was never an issue that needed to be discussed. The objective facts demonstrate that Massachusetts is where this case belonged from the beginning, and that Fitbit deliberately pursued California for improper reasons.

## IV. DEFENDANTS' MOTION ON MARKING HAS NARROWED THE ISSUES

In response to Defendants' motion to dismiss pre-suit damages claims pursuant to the marking statute, 35 U.S.C. § 287, Fitbit for the first time concedes that it does not commercialize any product under the '462 Patent, and that it is disclaiming any pre-suit damages under the '377 Patent.[7] (Opp., Section IV.C.) Fitbit tries to make it sound as if Defendants should have already known this, but Fitbit's complaint contains no such limitation, and on its face broadly seeks "lost profits," which are associated with loss of competitive sales. (Complaint, "Requested Relief.") In any event, far from being a "waste of the Court's and the parties' resources" (Opp., p. 2), Defendants' motion to dismiss as to pre-suit damages has led to several very useful conclusions, including: (1) that in view of Fitbit's disclaimer of pre-suit damages with respect to the '377 Patent, the Court should readily grant Defendants' Motion with respect to that patent, and (2) that Fitbit has expressly conceded that it lacks any present basis to obtain injunctive relief with respect to the '462 Patent (Opp., p. 21, n.8), and implicitly suggested the same is true with respect to the '377 Patent (Opp., p. 21).

Indeed, in view of Fitbit's new admissions concerning the '462 Patent – and its deliberate ambiguity regarding the '377 Patent – Fitbit's claims for both lost profits and injunctive relief should be dismissed for failure to state any plausible claim under *Iqbal/Twombly*. (*See* Motion, p. 20, n.9, arguing that injunctive relief

---

[7] Fitbit oddly hedges as to the '377 Patent, seemingly saying that it does not commercialize any product under it, yet refusing to unambiguously say so as it does with the '462 Patent. (Opp., Section IV.C.)

would be implausible absent commercialization.)  If Fitbit does not sell any competing products under the asserted patents, then it must plead some alternative plausible basis under which it could possibly seek to recover lost profits, rather than simply a reasonable royalty under 35 U.S.C. § 284.  The Complaint is devoid of any such plausible pleading.  Likewise, if Fitbit does not sell any competing products under the asserted patents, then it must plead plausible grounds under which it could be entitled to an injunction under the factors set forth in *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).  The Complaint is likewise devoid of any such plausible pleading.

Dismissal of the allegations of lost profits and injunctive relief is proper so that Fitbit is not able to hold Defendants "at ransom," threatening drastic remedies that it in fact has no present basis to seek.  If Fitbit believes that some future set of facts would support such remedies, then Fitbit should amend its complaint at that point in the future.  If Fitbit believes it presently is entitled to any such forms of relief, then let it amend its complaint now to plausibly state why that is so, rather than leveraging calculated silence against Defendants.

### V.  FITBIT'S PLEADING OF PRE-SUIT KNOWLEGDE IS IMPLAUSIBLE, AND COMPELS DISMISSAL

#### A.  Fitbit's Attorney Argument And Cited Cases Do Not Address The Facial Implausibility That Defendants Specifically Knew Of These Patents

Fitbit's Opposition does not truly grapple with the persuasive arguments that Defendants presented in their Motion showing the implausibility of Defendants' pre-suit knowledge of the patents-in-suit. (Motion, Section VI.)  Instead, Fitbit merely re-states the inadequate pleadings of its compliant.  Fitbit argues that the fact that Defendants have otherwise been in patent litigation with Fitbit concerning *unrelated Philips patents* means that Defendants were likely to have not only found and isolated the '377 Patent from the haystack of all of Fitbit's hundreds of patents, but to have also tracked Honeywell's many patents from a time period several years before Fitbit ever acquired the '462 Patent.  Fitbit's Opposition concedes by its silence the fact that it owns hundreds of patents,[8] but fails to explain to the Court why it is plausible that Defendants would have undertaken to analyze all of those patents when it was objectively much more reasonable to assume that Fitbit would have simply informed Defendants of any sincerely-held infringement concerns.  Ultimately, Fitbit's argument logically reduces to: "Defendants infringe our patents, so they must have been interested in them

---

[8] The Court may also judicially notice a simple search at USPTO.gov for patents assigned to Fitbit.

and known about them." Particularly in the context of large technology companies with large patent portfolios, it would set a dangerous precedent to say that pre-suit knowledge of a specific one or two of those hundreds of patents could be inferred from the bare allegation that the parties use similar technology and occasionally have related (but different) prior art cited to them in their many patent applications.  That is not plausibility:  it is the kind of "sheer possibility" that cannot state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Fitbit's cited cases are inapposite because they concerned allegations of pre-suit knowledge of the patents based upon more than just the bare fact that the parties were previously in litigation.  In *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 19-CV-12533-WGY, 2020 U.S. Dist. LEXIS 76156 (D. Mass. Apr. 30, 2020), the accused products were a revised design-around of the products that had been accused of infringement in the first suit, such that 10X could have been fairly charged with further investigating infringement.  Plaintiffs' allegation that 10X knew of the patents was further based on:  (1) 10X's patent licensing agreement with one of the plaintiffs, (2) 10X's co-founder admitting knowing of the work of one of the inventors, and (3) that one of the inventors had previously been employed at 10X.  *Id.* at *3-7.  No such facts are alleged (or exist) here.

In *InVue Sec. Prods. v. Mobile Tech, Inc.*, No. 3:19-cv-407-SI, 2019 U.S. Dist. LEXIS 180669, at *3-4 (D. Or. Oct. 18, 2019), the parties were relatively unknown small companies directly competing in a narrow niche market for retail store merchandise alarm systems.  Here, Fitbit has conceded that it does not even commercialize any products under the asserted patents, making it all the more implausible that Defendants would have been sifting through Fitbit's hundreds of patents looking for these particular ones.  (Opp., Section IV.C.)  The *InVue* court otherwise said that its decision was a "close call" (2019 U.S. Dist. LEXIS 180669, at *11), and was decided narrowly on the specific facts before it.

In *Groove Dig., Inc. v. Jam City, Inc.*, Civil Action No. 1:18-cv-01331-RGA, 2019 U.S. Dist. LEXIS 13563, at *12-13 (D. Del. Jan. 29, 2019), a pleading of pre-suit knowledge of the patent was deemed plausible because the parties were competitors in a niche market, and the plaintiff alleged that the defendant would have known of the patent from monitoring plaintiff's recent lawsuit against a competitor.  Here, by contrast, Fitbit has never previously filed any lawsuits concerning the patents-in-suit, so even if Defendants had been tracking Fitbit lawsuit, there would have been nothing to see.

In *Frac Shack Inc. v. Afd Petroleum Tex.*, No. 7:19-cv-00026-DC, 2019 U.S. Dist. LEXIS 141118, at *11-13 (W.D. Tex. June 13, 2019), the plaintiff had already sued the defendant previously on related patents

and obtained an injunction, and the facts showed that the defendant was actively changing its product designs in response to tracking the issuance of plaintiff's new patents in the Patent Office. Here, by contrast, Fitbit has not previously sued Defendants on related patents, nor have Defendants been engaging in design-around activity that would demonstrate any knowledge of Fitbit's patents.

With respect to the fact that Honeywell's '505 Application was cited during prosecution of a Royal Philips patent, Fitbit argues that this should be enough to impute knowledge of the later-issued '462 Patent that Fitbit procured from Honeywell just a few months ago. Fitbit cites cases for the proposition that following the Supreme Court's ruling in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016) relaxing the test for willful infringement, there should be no bright line rule concerning inferring knowledge of related patents. There are several reasons that Fitbit's arguments should not change the outcome here. *First*, many courts post-*Halo* continue to agree that knowledge of a patent should not be inferred as Fitbit advocates.[9] *Second,* Fitbit's cited cases are inapposite. *Simo Holdings, Inc. v. H.K. uCloudlink Network Tech. Ltd*., 396 F. Supp. 3d 323, 334-36 (S.D.N.Y. 2019) and *SiOnyx, LLC v. Hamamatsu Photonics K.K*., 330 F. Supp. 3d 574, 610 (D. Mass. 2018) were rulings on a JMOL and summary judgment motion, respectively, in which the court had been presented with significant evidence that the defendant actually had pre-suit knowledge of the patents for reasons beyond bare knowledge of a related patent. *Dentsply Sirona, Inc. v. Edge Endo, LLC*, No. 17-1041 WJ/SCY, 2019 U.S. Dist. LEXIS 59715 (D.N.M. Apr. 8, 2019) was merely a ruling on a motion to compel applying a liberal standard to assess the scope of possibly relevant discovery. *Third,* even if there were no bright line rule precluding inferring knowledge of a related patent, Fitbit's pleadings of pre-suit knowledge remain implausible for all the reasons articulated in the Motion and herein.

**B.    Precedent Supports Dismissing The Willfulness Allegations In Their Entirety**

Although there is a split of authority,[10] courts in this Circuit and elsewhere that have considered the import of the Supreme Court's ruling in *Halo* have concluded that it does not disturb the separate rule in *In re Seagate Tech., LLC,* 497 F.3d 1360, 1374 (Fed. Cir. 2007), that a patent owner cannot pursue willful

---

[9] *See, e.g., Finjan, Inc. v. Juniper Networks, Inc*., 2018 U.S. Dist. LEXIS 25323 (N.D. Cal. Feb. 14, 2018); *Finjan, Inc. v. Cisco Sys. Inc.,* 2017 U.S. Dist. LEXIS 87657 (N.D. Cal. June 7, 2017); *Windy City Innovations, LLC v. Microsoft Corp*., 193 F. Supp. 3d 1109, 1117 (N.D. Cal. 2016).

[10] *See, e.g., Apple Inc. v. Samsung Elecs. Co*., 258 F. Supp. 3d 1013, 1027 (N.D. Cal. 2017).

infringement claims based on post-suit conduct alone, and that absent plausible allegations of pre-suit knowledge of the patents, willfulness pleadings should be dismissed altogether rather than merely limited to post-filing conduct.  *Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-cv-02024-RMW, 2016 U.S. Dist. LEXIS 112504, at *20-21 (N.D. Cal. Aug. 22, 2016); *Adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:16-cv-1400-SI, 2017 U.S. Dist. LEXIS 89752, at *11-13 (D. Or. June 12, 2017); *Valinge Innovation AB v. Halstead New Eng. Corp.*, Civil Action No. 16-1082-LPS-CJB, 2018 U.S. Dist. LEXIS 88696, at *25-32 (D. Del. May 29, 2018). In *Cap Co., Ltd. v. McAfee, Inc.*, No. 14-cv-05068-JD, 2015 U.S. Dist. LEXIS 83522, at *6-8 (N.D. Cal. June 26, 2015), where such dismissal is granted, the court explained that it should be without leave to amend unless the patent owner is later able to show based on discovery that there was pre-suit knowledge of the patents.

### C. Fitbit's Indirect Infringement Claims Should Be Dismissed As To All Conduct Leading Up To And Including Defendants' Receipt Of The Complaint

Defendants do not dispute the proposition that indirect infringement claims may be maintained based on conduct subsequent to receiving notice of the patents via a complaint in a lawsuit.  However, the Court should still dismiss the indirect infringement claims with respect to the time period leading up to and including Defendants' receipt and review of the complaint (which occurred subsequent to its filing), as Defendants could not have plausibly formed any requisite knowledge or belief for indirect infringement before such time.

## VI. CONCLUSION

For the foregoing reasons and those set forth in the Motion, Defendants respectfully request that their requested relief as set forth in their previously presented Proposed Order be granted.

Dated:  August 17, 2020

Respectfully submitted,

*/s/ Jean-Paul Ciardullo*
Jean Paul Ciardullo, CA Bar No. 284170
FOLEY & LARDNER LLP
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2411
Phone:  (213) 972-4500
Fax:  (213) 486-0065
jciardullo@foley.com

*Counsel for Defendant
Koninklijke Philips N.V. and
Philips North America LLC*